UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 11-40944 |
| GAC STORAGE LANSING, LLC, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Jacqueline P. Cox |
| | ) | |

**STIPULATION AND FINAL ORDER PURSUANT TO
11 U.S.C. §§ 361 AND 363 (I) AUTHORIZING USE OF
CASH COLLATERAL, AND (II) GRANTING ADEQUATE PROTECTION**

This matter comes before this Court on the motion (the "Motion") [Docket No. 63] of **GAC Storage Lansing, LLC** (the "Debtor") seeking the entry of an order (a) authorizing, pursuant to Section 363(c) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), use of cash and cash equivalents constituting "Cash Collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code) in the ordinary course of business and pursuant to the Budgets (as defined herein); and (b) providing, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, adequate protection to **Branch Banking & Trust Company** ("Lender" or "BBT"), as senior secured creditor, with respect to any diminution in the value of the Lender's interest in the Cash Collateral; the Final Hearing having been held before this Court; due and sufficient notice of the Motion and the Final Hearing under the circumstances having been given; and upon the entire record made at the Final Hearing, and this Court having found good and sufficient cause appearing therefor;

{10242-001 ORD A0314694.DOC}

THE DEBTOR AND THE LENDER STIPULATE:

A.  On October 7, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). Debtor is a debtor in possession pursuant to the Bankruptcy Code §§ 1107(a) and 1108.

B.  Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that from time to time prior to the Petition Date the Lender loaned money to or for the benefit of the Debtor, pursuant to the terms and conditions of that certain Construction Loan Agreement dated January 11, 2007, as amended, modified, supplemented or restated from time to time (collectively, the "Loan Agreement"), and as further documented, recorded and evidenced by various other agreements, instruments, financing statements and documents entered into in connection with the Loan Agreement, all as may have been amended, modified or restated from time to time (collectively, the "Prepetition Loan Agreements").

C.  Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that, in accordance with the terms of the Prepetition Loan Agreements, the Debtor is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, and that, as of the Petition Date, (i) the Debtor is liable to the Lender in respect to loans made by the Lender to the Debtor pursuant to the Prepetition Loan Agreements for principal and interest in the total amount of $4,398,839.90 (the "Prepetition Loan Obligations"), and (ii) pursuant to the Prepetition Loan Agreements, the Debtor is liable to the Lender for accrued and unpaid interest, attorneys' fees, other out-of-pocket expenses, costs and indemnities.

D.  The Lender asserts that under the terms of the Prepetition Loan Agreements and as security for repayment of the Prepetition Indebtedness, the Debtor granted to the Lender security interests in, and liens upon substantially all of the Debtor's assets, both tangible and

intangible, as more fully described in the Prepetition Loan Agreements, which are incorporated herein by reference (collectively, including the Cash Collateral existing as of the Petition Date, the "<u>Prepetition Collateral</u>").

E.  The Lender asserts that the Lender's security interests in and liens on the Prepetition Collateral were properly perfected and are valid and enforceable first priority liens on and security interests in the Prepetition Collateral, that all of the Debtor's cash on the Petition Date constitutes proceeds of the Prepetition Collateral and, therefore, constitutes Cash Collateral, and that the Lender is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including for the use of the Cash Collateral, the use, sale or lease of the Prepetition Collateral other than the Cash Collateral and the continuation of the automatic stay under Section 362 of the Bankruptcy Code.

F.  Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the Lender, (iii) the creditors holding the 20 largest claims against the Debtors, and (iv) all parties requesting notice in this Chapter 11 Case.

G.  A need exists for the Debtor to use Cash Collateral to continue to operate its business and the Debtor has requested authority to do so as specified in the Budget (as defined below) in order to, *inter alia*, pay wages and generally conduct its business affairs, subject to and within the limits imposed by the mutually agreed upon Budget and further subject to the terms and conditions of this Final Order.

H.  The Lender has consented to the Debtor's use of Cash Collateral conditioned upon the express terms and conditions set forth in this Final Order.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS APPLICABLE, STIPULATED THAT, EFFECTIVE IMMEDIATELY:**

1. The Motion is granted, pursuant to the terms and conditions set forth in this Final Order and any objections thereto that have not previously been withdrawn are overruled. This Final Order is valid immediately and fully effective upon its entry.

2. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. Subject to the terms and conditions of this Final Order, the Debtor may use Cash Collateral and shall pay Debtor's ordinary and necessary business expenses for the period from and after February 19, 2012 through and including May 12, 2012 (the "Expiration Date") pursuant to the budget attached hereto and incorporated herein as **Exhibit A** (the "First Budget"), which has been consented to by the Lender. The First Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis during the subject period referenced therein, and the Debtor warrants and represents that the First Budget includes all reasonable, necessary, and currently foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of its business for the period set forth in the First Budget. In no event shall the Debtor use any Cash Collateral to pay any items except as set forth in the First Budget, or as approved by the Bankruptcy Court after notice to the Lender and a hearing, or as may be consented to in writing by the Lender.

4. On or before the date that is sixty (60) days after the date of the entry of this Final Order, the Debtor shall provide to the Lender a second budget covering the time period

from and after May 13, 2012 through August 18, 2012 (the "Second Budget," and together with the First Budget, "Budgets"), which shall be subject to the same limitations and conditions imposed by this Final Order on the First Budget. The Lender may in its sole discretion determine whether it consents to continue this Final Order through the time period covered by the Second Budget. If the Lender elects to so continue, it shall notify the Debtor of such election within five (5) days from its receipt of the Second Budget; if the Lender elects not to continue with this Final Order and the Second Budget, the Debtor may bring a motion to continue this Final Order subject to the terms of the Second Budget on or before May 12, 2012. If the Lender does elect to continue this Final Order, it shall advise the Debtor in writing of any objections it may have as to any item contained in the Second Budget (a "Disputed Item") within ten (10) days after the Lender's receipt of the Second Budget. If the Lender and Debtor can agree on the resolution of such Disputed Item, then the Second Budget will be revised accordingly and shall become effective without further order of this Court. If the Lender and Debtor can not agree on the resolution of such Disputed Item, then the Debtor must bring a motion before the Court to address such Disputed Item prior to the expiration of the coverage of the First Budget.

     5.    The Debtor further agrees not to incur any administrative expenses (other than fees and expenses of the Debtor's legal professionals) in an amount greater than $5,000 other than those set forth in the Budgets without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and a hearing, and the Debtor hereby waives any right to surcharge the Collateral (as defined below) under Section 506(c) of the Bankruptcy Code. Not later than the third (3rd) business day of each month, the Debtor shall provide to the Lender a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for the prior month, the dollar variance and the percentage variance (the

"Variance Percent") of such actual receipts and disbursements from those reflected in the Budgets for the applicable month. Any disbursement by the Debtor other than for such expenses set forth in the Budgets within the Variance Percent shall constitute an Event of Default under this Final Order unless the Lender consents to such disbursements in writing; provided, however, that the Debtor may make payments in excess of the total budgeted disbursements so long as (i) the Variance Percent of the aggregate of all actual disbursements for each month shall not exceed ten (10%) percent of the budgeted disbursements for that month and shall at no time exceed the actual accumulated cash holdings of the Debtor at the time of the incurrence of the expense; and (ii) the Variance Percent of the aggregate of all actual disbursements for any consecutive four-week period shall not exceed ten (10%) percent of the aggregate of all budgeted disbursements for such four-week period (subsections (i) and (ii) above are collectively, the "Allowed Variance"). The Adequate Protection Payments, as provided in the Budgets, shall be paid to Lender in full (with no variance) on the weeks that they are budgeted to the extent that funds are available. At the end of each month, the Debtor shall disburse to Lender all Cash Collateral in excess of the amounts set forth in the Budgets (but allowing for a minimum working capital balance for the proceeding four weeks of not less than $50,000 (the "Holdback")) to be applied first, to fund any unpaid Adequate Protection Payments for the current month or any preceding months, and second to be held in escrow and applied toward the payment of real estate taxes on the Collateral.

   6. Immediately upon entry of this Final Order, the Debtor shall account to the Lender for all cash, checks, notes, drafts, instruments, acceptances and other property representing cash or other proceeds of the Prepetition Collateral in the Debtor's possession or control. All cash, checks, notes, drafts, instruments, acceptances and other property and interests

in property of the Debtor (the "Cash Proceeds") currently in the possession of the Debtor or in any accounts in financial institutions and depository accounts, shall be deemed proceeds of the Prepetition Collateral. All Cash Proceeds shall be remitted to the Lender in accordance with the terms of this Final Order, subject to the Holdback.

7. The Debtor is hereby required to deliver to the Lender such other financial and other information concerning the business and affairs of the Debtor as the Lender shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lender under the Prepetition Loan Agreements. The Debtor will permit the Lender, the Lender's agents and any consultants engaged by the Lender reasonable access to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof (which expense shall constitute an agreed amendment to the Budgets), inspect the assets, properties, operations and affairs of the Debtor, and visit any or all of the offices of the Debtor. All of the foregoing activities shall be conducted during normal business hours, and in such a manner as to create the least disruption of Debtor's operations as is reasonably possible.

8. The Debtor shall further provide the Lender with (a) detailed information as to the extent and composition of the Collateral (as defined below) and any collections thereon (only if requested in writing by the Lender); (b) a current rent roll to be updated each month; (c) a monthly revenue report; and (d) a monthly report of actual expenditures versus Budget expenditures, detailed on a weekly basis; and copies of any reports provided to the Debtor by the property manager.

9. The Debtor's right to use Cash Collateral under this Final Order shall terminate upon the earlier of (i) the occurrence of any event described in paragraph 23 of this

Final Order, (ii) the entry of an order of this Court terminating the Debtor's right to use Cash Collateral under this Final Order or (iii) May 13, 2012 without any order having been entered theretofore authorizing the Debtor's further use of Cash Collateral (the "Termination Date"). During the term of this Final Order, in no event shall the Debtor be authorized to use Cash Collateral except strictly in compliance with the terms and conditions of this Final Order and the Budgets.

10. In providing for the use of Cash Collateral, the Debtor and the Lender stipulate and agree that:

(a) the Lender has no obligation to provide ongoing financing to the Debtor under the Prepetition Loan Agreements; provided, however, that the Lender reserves its rights to pursue any rights and remedies set forth thereunder against the Debtor;

(b) to the extent allowed under 11 U.S.C. § 506(b), the Lender may, after five (5) days written notice to the Debtor, continue to charge to the account of the Debtor and to pay in accordance with the Prepetition Loan Agreements all fees, expenses and other costs owing as of the Petition Date and which may arise in the normal course of the Debtor's business during the Chapter 11 Case with the Replacement Liens (as defined below) to secure such fees, expenses and other costs;

(c) without prejudice to the rights of any other party, the Debtor is not aware of and hereby waives any claim, counterclaim, setoff or defense of any kind or nature which would in any way affect the validity, enforceability and non-avoidability of the Prepetition Loan Obligations, the Prepetition Loan Agreements, or any of the liens and security interests held by the Lender under the Prepetition Loan Agreements; provided, however, that the Debtor does not acknowledge or agree that the Lender's liens and security interests encumber and/or

attach to all of the Debtor's assets, and the Debtor reserves the right to challenge the extent of the Lender's asserted liens and security interests under the Prepetition Loan Agreements except as expressly provided in Paragraph 10(d) of this Final Order (collectively, the "Prepetition Liens"); and

(d) without prejudice to the rights of any other party, including, without limitation, any subsequently appointed Chapter 11 trustee or Chapter 7 trustee, the Debtor stipulates (i) that the Prepetition Liens are valid, perfected and unavoidable as to the real property identified by Permanent Index Number: 30-30-119-030-0000 Vol. 228 (nothing in this Final Order determines whether and to what extent any other real property of the Debtor is covered by the Pre-Petition Liens), (ii) that the Lender as of the Petition Date has an allowed claim in the amount of the Prepetition Loan Obligations without any determination as to the secured or unsecured status of such claim, (iii) the real property of the Debtor commonly known as 2505 Bernice road and/or 17333 Oak Avenue, Lansing, Cook County, Illinois 60432 containing a 532 unit self-storage facility commonly known as Great American Storage is "single asset real estate" as defined by 11 U.S.C. 101(51B), and (iv) that the Lender and all of its agents, accountants, officers, attorneys, directors, employees and agents shall be and are hereby released from all claims and causes of actions, whether known or unknown, contingent or fixed, liquidated or unliquidated, which claims and causes of actions arose prior to the Petition Date.

11. The Lender's obligations under this Final Order are conditioned upon and subject to the delivery to the Lender of, within seven (7) days after the entry of this Final Order, evidence satisfactory to the Lender that the Collateral (as defined below) is insured for the full replacement value thereof and the Lender is named as loss payee and/or as additional insured on all insurance policies.

12. The Lender is not required to advance to the Debtor any amounts that may be available for lending under the Prepetition Loan Agreements with the Debtor.

13. The Debtor is authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to Lender pursuant to the terms and conditions of this Final Order, including, without limitation, the Adequate Protection Payments listed in the Budgets.

14. The Lender is hereby granted, as adequate protection for any diminution in the value of its interest in Cash Collateral only, a valid, perfected and enforceable first-priority security interest (the "Replacement Liens") in and upon the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles, and any and all proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing, which Replacement Liens shall be in addition to the security interests of the Lender in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other property of the Debtor that is subject to a lien or security interest of the Lender, in the same order of priority as such liens and security interests existed on the Petition Date (collectively, all of the collateral described in this paragraph, the "Collateral"). Nothing in this Order shall be construed as an admission or finding that the Lender did not already have a lien or security interest on any item of the Collateral as of the Petition Date.

15. The Replacement Liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off of the Lender existing on the Petition Date; and

(ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Final Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents.

16. In addition to the Replacement Liens granted to the Lender pursuant to this Final Order, the Lender is hereby granted an administrative claim under Section 507(b) of the Bankruptcy Code (the "507(b) Claim") in the full amount allowable under Section 507(b) and the Bankruptcy Code to the extent of any diminution of the value of its interest in the Cash Collateral.

17. Any provision of this Order or the Prepetition Loan Agreements to the contrary notwithstanding, the liens and 507(b) Claims granted to the Lender pursuant to the Prepetition Loan Agreements and this Final Order shall be subject and subordinate to a carve out (the "Carve Out") for (i) amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (ii) the amount of any budgeted but unpaid fees for counsel for the Debtor incurred during the effectiveness of this Final Order.

18. Unless the Lender has provided its prior written consent, there shall not be entered in this Chapter 11 Case any order which authorizes any of the following: (i) the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral (subject to the Debtor's reservation of rights to challenge the extent of the Lender's asserted security interests in, and liens upon, the Debtor's assets under the Prepetition Loan Agreements) and/or entitled to priority administrative status which is equal or senior to the Replacement Liens granted to the Lender herein, unless

such credit or issuance of indebtedness provides for payment in full of the Prepetition Loan Obligations and any other obligations of the Debtor to the Lender at the closing of such transaction; or (ii) the enforcement of any claimed security, mortgage, collateral interest or other lien of any person other than the Lender on all or any portion of the Collateral (subject to the Debtor's reservation of rights to challenge the extent of the Lender's asserted security interests in, and liens upon, the Debtor's assets under the Prepetition Loan Agreements).

19. The protections afforded to the Lender under this Final Order shall survive the entry of any order confirming a plan of reorganization and the Prepetition Liens and the Replacement Liens and the 507(b) Claim shall continue in these proceedings, and the Prepetition Liens and Replacement Liens and 507(b) Claim shall maintain their priority as provided by this Final Order until any diminution of the Lender's interest in Cash Collateral has been paid in full.

20. The Lender and the Debtor may make non-material modifications or amendments to the Budgets or this Final Order, to take effect upon five (5) business days' written notice signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budgets shall be and hereby are expressly authorized hereunder. The Lender may consent in writing to extend the Expiration Date without a further hearing or order of this Court. If the Lender determines to do so, written notification of such extension shall be provided to all parties in-interest.

21. The Debtor will permit any third party consultants retained by the Lender (collectively, the "Lender's Consultants") to examine the respective corporate, financial and operating records, and, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices of the Debtor, and the Debtor will cooperate with the Lender's Consultants in all respects. All of the foregoing activities shall be conducted during

normal business hours, and in such a manner as to create the least disruption of Debtor's operations as is reasonably possible.

22. The provisions of this Final Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court, or with the consent of the Lender. Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Final Order. Notwithstanding any such stay, modification, reversal or vacation, all use of the Cash Collateral prior to written notice to the Lender of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the Liens, Replacement Liens and 507(b) Claims granted herein.

23. Notwithstanding anything to the contrary in this Final Order, the Debtor's authority to use Cash Collateral pursuant to this Final Order shall terminate immediately and automatically (a) upon seventy-two (72) hours of the delivery of written notice to the Debtor and the United States Trustee by the Lender of any default or Event of Default of any terms and provisions of this Final Order arising after the Petition Date; and (b) without notice of any kind upon (i) the dismissal of this Chapter 11 Case or a conversion of the Chapter 11 Case to a Chapter 7 case or appointment of a trustee or examiner with expanded powers, (ii) the entry of an order granting any other claim superpriority status or a lien equal or superior to the liens granted to the Lender, (iii) the initiation by any person of any lawsuit or adversary proceeding seeking to challenge the validity or priority of (or to subordinate) any of the Lender's liens and security interests on any of the Collateral, (iv) the entry of an order lifting the automatic stay as to the Cash Collateral (with or without the lifting of the stay as to any other Collateral) or as to all of

the Collateral, upon a motion brought by Lender, (v) the failure of the Debtor to provide any other adequate protection for BBT's interest in the Collateral as may be required by any court order entered subsequently hereto, or (vi) the use of Cash Collateral in excess of amounts permitted under this Final Order.

24. In consideration for the continued use of Cash Collateral, the Debtor on behalf of itself and its successors and assigns, but without prejudice to the rights of any statutory committee appointed in this Chapter 11 Case or to the rights of other parties in interest, including but not limited to any Chapter 11 or Chapter 7 trustee appointed in this case to assert claims on behalf of the Debtor's estate, and excluding the Debtor's right to challenge the extent of the Lender's liens and security interests against and in the Debtor's property as set forth in paragraphs 10(c) and (d) of this Final Order, shall forever release, discharge and acquit the Lender and its officers, directors, employees, agents, attorneys and predecessors in interest of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, which arose on or prior to the date this Final Order is entered with respect to the Debtor, the Prepetition Indebtedness or the Prepetition Loan Agreements, unless applicable law requires otherwise.

25. The provisions of this Final Order shall be binding upon and inure to the benefit of the Lender and its successors and assigns.

26. To the extent there exists any conflict between the Prepetition Loan Documents and this Final Order, this Final Order shall govern.

**SO ORDERED, ADJUDGED, AND DECREED THIS 20 DAY OF MARCH, 2012.**

MAR 2 0 2012

_____
UNITED STATES BANKRUPTCY JUDGE

**AGREED TO AND CONSENTED TO THIS 20th DAY OF MARCH, 2012**

| GAC STORAGE LANSING, LLC | BRANCH BANKING AND TRUST COMPANY |
|---|---|
| By: /s/ Gordon E. Gouveia<br>      One of Its Attorneys | By: /s/ Ryan T. Schultz<br>      One of Its Attorneys |
| Robert M. Fishman<br>Gordon E. Gouveia<br>SHAW GUSSIS FISHMAN GLANTZ<br>   WOLFSON & TOWBIN LLC<br>321 North Clark Street, Suite 800<br>Chicago, Illinois 60654<br>Tel: (312) 541-0151<br>Fax: (312) 980-3888 | N. Neville Reid<br>Ryan T. Schultz<br>FOX, HEFFER, SWIBEL, LEVIN &<br>CARROLL, LLP<br>200 W. Madison St., Suite 3000<br>Chicago, IL 60606<br>Tel: (312) 224-1231<br>Fax: (312) 224-1202 |

# EXHIBIT A

GAC Storage Lansing, LLC
Cash Collateral Budget

| | Week of Feb 19, 12 | Week of Feb 26, 12 | Week of Mar 4, 12 | Week of Mar 11, 12 | Week of Mar 18, 12 | Week of Mar 25, 12 | Week of Apr 1, 12 | Week of Apr 8, 12 | Week of Apr 15, 12 | Week of Apr 22, 12 | Week of Apr 29, 12 | Week of May 6, 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue | 13,407.72 | 20,258.57 | 10,856.49 | 4,865.42 | 13,541.80 | 20,258.57 | 20,359.88 | 10,910.77 | 4,889.75 | 13,609.50 | 20,461.66 | 10,965.33 | 169,202.69 |
| **Expense** | | | | | | | | | | | | | |
| 60001 · Operating Expenses | | | | | | | | | | | | | |
| 6005 · Employment Expenses | | | | | | | | | | | | | |
| 6037 · Payroll Tax - SUI | 0.00 | 30.00 | 0.00 | 30.00 | 0.00 | 30.00 | 0.00 | 30.00 | 0.00 | 0.00 | 30.00 | 0.00 | 180.00 |
| 6020 · Salary - Assist Mgr | 0.00 | 1,250.00 | 0.00 | 1,250.00 | 0.00 | 1,250.00 | 0.00 | 1,250.00 | 0.00 | 0.00 | 1,250.00 | 0.00 | 7,500.00 |
| 6010 · Salary - Manager | 0.00 | 1,800.00 | 0.00 | 1,800.00 | 0.00 | 1,800.00 | 0.00 | 1,800.00 | 0.00 | 0.00 | 1,800.00 | 0.00 | 10,800.00 |
| 6030 · Payroll Fees | 0.00 | 40.00 | 0.00 | 40.00 | 0.00 | 40.00 | 0.00 | 40.00 | 0.00 | 0.00 | 40.00 | 0.00 | 240.00 |
| 6035 · Payroll Tax - FICA | 0.00 | 220.00 | 0.00 | 220.00 | 0.00 | 220.00 | 0.00 | 220.00 | 0.00 | 0.00 | 220.00 | 0.00 | 1,320.00 |
| Total 6005 · Employment Expenses | 0.00 | 3,340.00 | 0.00 | 3,340.00 | 0.00 | 3,340.00 | 0.00 | 3,340.00 | 0.00 | 0.00 | 3,340.00 | 0.00 | 20,040.00 |
| 6300 · Bank Charges | | | | | | | | | | | | | |
| 6305 · Bank Service Charges | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 225.00 |
| Total 6300 · Bank Charges | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 225.00 |
| 6500 · Maintenance & Repairs | | | | | | | | | | | | | |
| 6505 · Pest Control | 85.00 | 0.00 | 0.00 | 0.00 | 85.00 | 0.00 | 0.00 | 0.00 | 0.00 | 85.00 | 0.00 | 0.00 | 255.00 |
| 6515 · Fire Alarms System | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 |
| 6535 · Security System | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 |
| 6545 · Repairs Storage | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 | 0.00 | 0.00 | 75.00 | 225.00 |
| 6550 · Landscaping & Snow Removal | 0.00 | 750.00 | 0.00 | 0.00 | 0.00 | 300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 180.00 | 0.00 | 1,230.00 |
| Total 6500 · Maintenance & Repairs | 85.00 | 750.00 | 0.00 | 75.00 | 85.00 | 300.00 | 150.00 | 75.00 | 0.00 | 85.00 | 180.00 | 75.00 | 1,860.00 |
| 6600 · Marketing | | | | | | | | | | | | | |
| 6606 · Internet | 0.00 | 0.00 | 165.00 | 0.00 | 400.00 | 0.00 | 0.00 | 0.00 | 400.00 | 0.00 | 0.00 | 0.00 | 965.00 |
| 6648 · Directory Advertising | 0.00 | 4,000.00 | 0.00 | 0.00 | 0.00 | 4,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,000.00 | 0.00 | 12,000.00 |
| Total 6600 · Marketing | 0.00 | 4,000.00 | 165.00 | 0.00 | 400.00 | 4,000.00 | 0.00 | 0.00 | 400.00 | 0.00 | 4,000.00 | 0.00 | 12,965.00 |
| 6700 · Merchant Card Expense | | | | | | | | | | | | | |
| 6705 · Merchant Account Fees | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 2,100.00 |
| Total 6700 · Merchant Card Expense | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 700.00 | 0.00 | 2,100.00 |
| 6800 · Office and Site Expenses | | | | | | | | | | | | | |
| Eviction Costs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0.00 | 0.00 | 250.00 |
| Merchandise Stock | 0.00 | 0.00 | 0.00 | 0.00 | 175.00 | 0.00 | 0.00 | 0.00 | 175.00 | 0.00 | 0.00 | 0.00 | 350.00 |
| 6284 · Software Maintenance | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0.00 | 600.00 |
| 6845 · Office Supplies Expense | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0.00 | 0.00 | 150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 450.00 |
| 6805 · Call Measurement | 80.00 | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 0.00 | 0.00 | 0.00 | 80.00 | 0.00 | 0.00 | 240.00 |
| 6855 · Telephone/Fax/Internet | 0.00 | 332.25 | 0.00 | 0.00 | 0.00 | 332.25 | 0.00 | 0.00 | 0.00 | 0.00 | 332.25 | 0.00 | 996.75 |
| Total 6800 · Office and Site Expenses | 80.00 | 332.25 | 200.00 | 0.00 | 325.00 | 537.25 | 200.00 | 0.00 | 325.00 | 205.00 | 532.25 | 0.00 | 2,886.75 |
| 6900 · Professional Fees | | | | | | | | | | | | | |
| 6945 · Management Fees | 0.00 | 0.00 | 2,941.92 | 0.00 | 0.00 | 0.00 | 2,971.34 | 0.00 | 0.00 | 0.00 | 0.00 | 2,986.19 | 8,899.45 |
| US Trustee Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 650.00 | 0.00 | 0.00 | 650.00 |
| Legal Fees | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 0.00 | 0.00 | 20,000.00 |
| Total 6900 · Professional Fees | 2,000.00 | 2,000.00 | 4,941.92 | 2,000.00 | 2,000.00 | 2,000.00 | 4,971.34 | 2,000.00 | 2,000.00 | 2,650.00 | 0.00 | 2,986.19 | 29,549.45 |
| 7000 · Taxes / Insurance / Interest | | | | | | | | | | | | | |
| 7010 · Site Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 9,300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,300.00 |
| 7005 · Property Taxes | 0.00 | 99,999.22 | 0.00 | 0.00 | 0.00 | 18,460.24 | 0.00 | 0.00 | 0.00 | 0.00 | 18,460.24 | 0.00 | 136,919.70 |
| 7015 · Adequate Protection Payments | 0.00 | 0.00 | 9,347.53 | 0.00 | 0.00 | 0.00 | 9,347.53 | 0.00 | 0.00 | 0.00 | 0.00 | 9,347.53 | 37,390.12 |
| Total 7000 · Taxes / Insurance / Interest | 0.00 | 99,999.22 | 9,347.53 | 0.00 | 9,300.00 | 18,460.24 | 9,347.53 | 0.00 | 0.00 | 0.00 | 18,460.24 | 9,347.53 | 183,609.82 |
| 7200 · Utilities | | | | | | | | | | | | | |
| 7205 · Electricity & Gas | 0.00 | 0.00 | 0.00 | 1,939.91 | 0.00 | 0.00 | 0.00 | 1,939.91 | 0.00 | 0.00 | 0.00 | 1,939.91 | 7,759.64 |
| 7210 · Trash Removal | 0.00 | 0.00 | 0.00 | 145.00 | 0.00 | 0.00 | 0.00 | 145.00 | 0.00 | 0.00 | 0.00 | 145.00 | 580.00 |
| Total 7200 · Utilities | 0.00 | 0.00 | 0.00 | 2,084.91 | 0.00 | 0.00 | 0.00 | 2,084.91 | 0.00 | 0.00 | 0.00 | 2,084.91 | 8,339.64 |
| **Total Expense** | 2,165.00 | 111,196.47 | 14,654.45 | 7,499.91 | 12,110.00 | 29,412.49 | 14,668.87 | 7,499.91 | 2,725.00 | 2,940.00 | 27,287.49 | 14,493.63 | 261,575.56 |
| **Net Cash Flow** | 11,242.72 | (90,937.90) | (3,797.96) | (2,634.49) | 1,431.80 | (9,153.92) | 5,690.99 | 3,410.86 | 2,164.75 | 10,669.50 | (6,825.83) | (3,528.31) | (92,372.97) |