**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 11-40944 |
| GAC STORAGE LANSING, LLC, *et al.*, ) | (Jointly Administered) |
| ) | |
| ) | Hon. Jacqueline P. Cox |
| Debtors. ) | |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 361 AND 363 (I) AUTHORIZING USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION**

This matter comes before this Court on the motion **[Docket No. ____]** (the "Motion")[1] of **GAC Storage Copley Place, LLC** (the "Debtor") seeking the entry of an order (a) authorizing, pursuant to Section 363(c) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), continued use of cash and cash equivalents constituting "Cash Collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code) in the ordinary course of business and pursuant to the Budget (as defined herein); and (b) providing, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, adequate protection to Bank of America, N.A. (the "Lender"), as senior secured creditor, with respect to any diminution in the value of the Lender's interest in the Cash Collateral; due and sufficient notice of the Motion under the circumstances having been given; and upon the entire record made at the hearing on the Motion, and this Court having found good and sufficient cause appearing therefore;

---

[1] Any capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion or the Stipulation and Final Order Pursuant to 11 U.S.C. §§ 361 and 363 (I) Authorizing Use of Cash Collateral, and (II) Granting Adequate Protection entered March 20, 2012 [Docket No. 256].

{10241-001 ORD A0321010.DOC}

**IT IS HEREBY ORDERED, ADJUDGED, DECREED THAT:**

1. The Motion is granted, pursuant to the terms and conditions set forth in this Final Order and any objections thereto that have not previously been withdrawn are overruled. This Final Order is valid immediately and fully effective upon its entry.

2. This Court has jurisdiction over this Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. Subject to the terms and conditions of this Final Order, the Debtor may use Cash Collateral and shall pay Debtor's ordinary and necessary business expenses for the period of July 2, 2012 to August 18, 2012, pursuant to the budget attached hereto and incorporated herein as <u>Exhibit 1</u> (the "Budget"). The Budget reflects, on a line item basis, anticipated cash receipts and expenditures on a weekly basis, and the Debtor warrants and represents that the Budget includes all reasonable, necessary, and currently foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of its business for the period set forth in the Budget. In no event shall the Debtor use any Cash Collateral to pay any items except as set forth in the Budget, or as approved by the Bankruptcy Court after notice to the Lender and a hearing, or as may be consented to in writing by the Lender.

4. The Debtor agrees not to incur any administrative expenses in an aggregate amount greater than $5,000 (other than fees and expenses of the Debtor's legal professionals) other than those set forth in the Budget without the prior written consent of the Lender or approval by the Bankruptcy Court after notice to the Lender and a hearing, and the Debtor hereby waives any right to surcharge the Collateral (as defined below) under Section 506(c) of the Bankruptcy Code. Not later than the third (3rd) business day of each month, the

Debtor shall provide to the Lender a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for the prior month, the dollar variance and the percentage variance (the "Variance Percent") of such actual receipts and disbursements from those reflected in the Budget for the applicable month. Any disbursement by the Debtor other than for such expenses set forth in the Budget within the Variance Percent shall constitute an Event of Default under this Final Order unless the Lender consents to such disbursements in writing; provided, however, that the Debtor may make payments in excess of the total budgeted disbursements so long as (i) the Variance Percent of the aggregate of all actual disbursements for each month shall not exceed ten (10%) percent of the budgeted disbursements for that month and shall at no time exceed the actual accumulated cash holdings of the Debtor at the time of the incurrence of the expense; and (ii) the Variance Percent of the aggregate of all actual disbursements for any consecutive four-week period shall not exceed ten (10%) percent of the aggregate of all budgeted disbursements for such four-week period (subsections (i) and (ii) above are collectively, the "Allowed Variance"). The Adequate Protection Payments, as provided in the Budget, shall be paid to Lender in full (with no variance) on the weeks that they are budgeted to the extent that funds are available. At the end of each month, the Debtor shall disburse to Lender all Cash Collateral in excess of the amounts set forth in the Budget (but allowing for a minimum working capital balance for the proceeding four weeks of not less than $50,000 (the "Holdback")) to be applied first, to fund any unpaid Adequate Protection Payments for the current month or any preceding months, and second to be held in escrow and applied toward the payment of real estate taxes on the Property.

5. The Debtor is hereby required to deliver to the Lender such other financial and other information concerning the business and affairs of the Debtor as the Lender shall

reasonably request from time to time, including, without limitation, the corporate, financial and operating reports and information provided to the Lender under the Prepetition Loan Agreements. The Debtor will permit the Lender, the Lender's agents and any consultants engaged by the Lender reasonable access to examine the respective corporate, financial and operating records, and, at the Debtor's expense, make copies thereof (which expense shall constitute an agreed amendment to the Budgets), inspect the assets, properties, operations and affairs of the Debtor, and visit any or all of the offices of the Debtor, and the Debtor will cooperate with the Lender, its agents and consultants in all reasonable respects. All of the foregoing activities shall be conducted during normal business hours, and in such a manner as to create the least disruption of Debtor's operations as is reasonably possible.

6. The Debtor shall further provide the Lender with (a) detailed information as to the extent and composition of the Collateral (as defined below) and any collections thereon, upon written request by the Lender; (b) a current rent roll to be updated each month; (c) a monthly revenue report; (d) a monthly report of actual expenditures versus expenditures as shown in the Budgets, detailed on a weekly basis; and (e) copies of any reports provided to the Debtor by the property manager.

7. The Debtor's right to use Cash Collateral shall terminate upon the earlier of (a) the close of business on August 18, 2012, subject to further order of the Court extending the duration of this Final Order; (b) the occurrence of any event described in paragraph 19 of this Final Order; and (c) the entry of an order of this Court terminating the Debtor's right to use Cash Collateral under this Final Order (the "Termination Date"). In no event shall the Debtor be authorized to use Cash Collateral except strictly in compliance with the terms and conditions of this Final Order and the Budget.

8.  In providing for the use of Cash Collateral, the Debtor and the Lender have stipulated and agreed that:

(a) the Lender has no obligation to provide ongoing financing to the Debtor under the Prepetition Loan Agreements; provided, however, that the Lender reserves its rights to pursue any rights and remedies set forth thereunder against the Debtor;

(b) to the extent allowed under 11 U.S.C. § 506(b), the Lender may continue to charge to the account of the Debtor and to pay in accordance with the Prepetition Loan Agreements all fees, expenses and other costs owing as of the Petition Date and which may arise in the normal course of the Debtor's business during the Chapter 11 Case with the Replacement Liens (as defined below) to secure such fees, expenses and other costs;

(c) without prejudice to the rights of any other party, the Debtor is not aware of and hereby waives any claim, counterclaim, setoff or defense of any kind or nature which would in any way (i) affect the validity, enforceability and non-avoidability of the Prepetition Loan Obligations, the Prepetition Loan Agreements, or any of the liens and security interests held by the Lender under the Prepetition Loan Agreements (collectively, the "Prepetition Liens"), or (ii) reduce or affect the obligations of the Debtor to pay any of the Prepetition Loan Obligations; and

(d) without prejudice to the rights of any other party including, but not limited to any Chapter 11 or Chapter 7 trustee appointed in this case, the Debtor stipulates (i) that the Prepetition Liens are valid, perfected and unavoidable, (ii) that the Lender as of the Petition Date has an allowed claim in the amount of the Prepetition Loan Obligations, and (iii) that the Lender and all of its agents, accountants, officers, attorneys, directors, employees and agents shall be and are hereby released from all claims and causes of actions, whether known or

unknown, contingent or fixed, liquidated or unliquidated, which claims and causes of actions arose prior to the Petition Date.

9.     The Lender is not required to advance to the Debtor any amounts that may be available for lending under the Prepetition Loan Agreements with the Debtor.

10.    The Debtor is authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to Lender pursuant to the terms and conditions of this Final Order, including, without limitation, the Adequate Protection Payments listed in the Budget.

11.    The Lender is hereby granted, as adequate protection for any diminution in the value of the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable first-priority security interest (the "Replacement Liens") in and upon the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, and all other real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all accounts, inventory, instruments, investment property, documents, equipment, fixtures, general intangibles, and any and all proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing, and the proceeds of any causes of action, which Replacement Liens shall be in addition to the security interests of the Lender in the Prepetition Collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, in the same order of priority as such security interests existed on the Petition Date (collectively, all of the collateral described in this paragraph, the "Collateral"). The provisions of any intercreditor agreements (including, without

limitation, with any sureties) shall remain in full force and effect and shall continue with respect to the liens and security interests granted to the Lender in the Collateral.

12.  The Replacement Liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off of the Lender existing on the Petition Date; and (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Final Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents.

13.  In addition to the Replacement Liens granted to the Lender pursuant to this Final Order, the Lender is hereby granted an administrative claim in the full amount allowable under Section 507(b) of the Bankruptcy Code (the "507(b) Claim").

14.  Any provision of this Final Order or the Prepetition Loan Agreements to the contrary notwithstanding, the liens and 507(b) Claims granted to the Lender pursuant to the Prepetition Loan Agreements and this Final Order shall be subject and subordinate to a carve out (the "Carve Out") for (i) amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and (ii) the amount of any budgeted but unpaid fees for counsel for the Debtor incurred prior to the Termination Date of this Final Order. Notwithstanding anything to the contrary herein, no Collateral, Cash Collateral, or any portion of the Carve-Out may be used to object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Prepetition Indebtedness or the liens securing the Prepetition Indebtedness, or to prosecute or assert any claims or causes of action against the Lender.

15. Unless the Lender has provided its prior written consent, there shall not be entered in this Case any order which authorizes any of the following: (i) the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to the Replacement Liens granted to the Lender herein, unless such credit or issuance of indebtedness provides for payment in full of the Prepetition Obligations and any other obligations of the Debtor to the Lender at the closing of such transaction; or (ii) the enforcement of any claimed security, mortgage, collateral interest or other lien of any person other than the Lender on all or any portion of the Collateral.

16. The Lender and the Debtor may make non-material modifications or amendments to the Budgets or this Final Order, to take effect upon five (5) business days' written notice signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budgets shall be and hereby are expressly authorized hereunder. The Lender may consent in writing to extend the Expiration Date without a further hearing or order of this Court. If the Lender determines to do so, written notification of such extension shall be provided to all parties in-interest.

17. The Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operations or management of the Debtor solely by consenting to the Budgets and by taking any other actions authorized by this Final Order, or by exercising the rights and remedies as and when permitted pursuant to this Final Order or the Prepetition Loan Agreements.

18. The provisions of this Final Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court, or with the consent of the Lender.

Any stay, modification, reversal or vacation of this Final Order shall not affect the validity of any obligation of the Debtor to the Lender incurred pursuant to this Final Order. Notwithstanding any such stay, modification, reversal or vacation, all use of the Cash Collateral prior to written notice to the Lender of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the Prepetition Liens, the Replacement Liens and 507(b) Claims granted herein.

19. Notwithstanding anything to the contrary in this Final Order, the Debtor's authority to use Cash Collateral pursuant to this Final Order shall terminate immediately and automatically (a) upon seventy-two (72) hours of the delivery of written notice to the Debtor and the United States Trustee by the Lender of any default or Event of Default of any terms and provisions of this Final Order; provided, however, that the Lender shall forbear until the Termination Date on the prepetition Events of Default under the Prepetition Loan Agreements; and (b) without notice of any kind upon (i) the date provided in paragraph 9(a) above, (ii) the conversion of the Chapter 11 Case to a Chapter 7 case or appointment of a trustee or examiner with expanded powers without the consent of the Lender, (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to the liens granted to the Lender, (iv) the initiation by any person of any lawsuit or adversary proceeding seeking to challenge the validity or priority of (or to subordinate) any of the Lender's liens and security interests on any of the Collateral, or (v) the use of Cash Collateral in excess of amounts permitted under this Final Order. Upon the Termination Date, the automatic stay pursuant to Section 362(a) of the Bankruptcy Code shall be deemed lifted and modified, without further order of this Court, to permit the Lender to exercise any and all of their rights and remedies under the Prepetition Loan

Agreements and this Final Order; provided, however, that the obligations and rights of the Lender and Debtor with respect to all transactions which have occurred prior to the Termination Date, including, without limitation, the Lender's security in the Collateral and Debtor's right after notice and a hearing to (i) use Cash Collateral, (ii) reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of Default, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination the Lender and the Debtor shall be deemed to have retained all of their rights and remedies, including, without limitation, those provided pursuant to the Prepetition Loan Agreements, this Final Order and the Bankruptcy Code, and Debtor's right after notice and a hearing to (i) request the use of Cash Collateral, (ii) seek to reinstate, or defend against the lifting of, the automatic stay, or (iii) contest the existence of a default or Event of Default.

20.    In consideration for the continued use of Cash Collateral, the Debtor on behalf of itself and its successors and assigns, but without prejudice to the rights of any statutory committee appointed in this Chapter 11 Case or to the rights of other parties in interest, including any Chapter 11 or Chapter 7 trustee appointed in this case to assert claims on behalf of the Debtor's estate, shall forever release, discharge and acquit the Lender and its officers, directors, employees, agents, attorneys and predecessors in interest of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this Final Order is entered with respect to the Debtor, the Prepetition Indebtedness, the Collateral, or the Prepetition Loan Agreements, unless applicable law requires otherwise.

21. Entry of this Final Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Lender may have against the Debtor or any third parties, and without prejudice to the right of the Lender to seek relief from the automatic stay in effect pursuant to section 362 of the Bankruptcy Code, or any other relief in this Case, and the right of the Debtor and any statutory committee appointed in this Case to oppose such relief.

22. To the extent there exists any conflict between the Prepetition Loan Agreements and this Final Order, this Final Order shall govern.

**SO ORDERED, ADJUDGED, AND DECREED THIS ___ DAY OF JUNE, 2012.**

_____
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

**GAC Storage Copley Place, LLC**
**Cash Collateral Budget**

| | Week of Jul 1, 12 | Week of Jul 8, 12 | Week of Jul 15, 12 | Week of Jul 22, 12 | Week of Jul 29, 12 | Week of Aug 5, 12 | Week of Aug 12, 12 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Revenue | 42,569.42 | 9,923.19 | 8,100.41 | 13,136.98 | 42,995.12 | 10,022.42 | 8,181.41 | 134,928.95 |
| **Expense** | | | | | | | | |
| **6000 · Employment Expenses** | | | | | | | | |
| 6005 · Payroll Expenses | 0.00 | 86.00 | 0.00 | 0.00 | 86.00 | 0.00 | 86.00 | 258.00 |
| 6010 · Managers Salary | 0.00 | 1,582.00 | 0.00 | 0.00 | 1,582.00 | 0.00 | 1,582.00 | 4,746.00 |
| 6015 · Assistant Mgr Salary | 0.00 | 1,039.00 | 0.00 | 0.00 | 1,039.00 | 0.00 | 1,039.00 | 3,117.00 |
| 6031 · Maint Tech Salary | 0.00 | 381.00 | 0.00 | 0.00 | 381.00 | 0.00 | 381.00 | 1,143.00 |
| Recruiting & Training | 265.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 265.00 |
| 6036 · Payroll Expense -FICA | 0.00 | 238.00 | 0.00 | 0.00 | 238.00 | 0.00 | 238.00 | 714.00 |
| 6037 · Payroll Exp - Fed Unemployment | 0.00 | 218.00 | 0.00 | 0.00 | 218.00 | 0.00 | 218.00 | 654.00 |
| 6045 · Workers Compensation | 0.00 | 147.00 | 0.00 | 0.00 | 147.00 | 0.00 | 147.00 | 441.00 |
| Total 6000 · Employment Expenses | 265.00 | 3,691.00 | 0.00 | 0.00 | 3,691.00 | 0.00 | 3,691.00 | 11,338.00 |
| **6300 · Op.Exp. -Bank Service Charges** | | | | | | | | |
| 6305 · Bank Service Charges | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| Total 6300 · Op.Exp. -Bank Service Charges | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| **6500 · Maintenance & Repairs** | | | | | | | | |
| Repairs Storage | 311.00 | 0.00 | 150.00 | 0.00 | 0.00 | 0.00 | 150.00 | 611.00 |
| 6505 · Pest Control | 0.00 | 125.00 | 0.00 | 0.00 | 0.00 | 125.00 | 0.00 | 250.00 |
| 6515 · Fire Alarms & Inspections | 240.00 | 0.00 | 0.00 | 0.00 | 240.00 | 0.00 | 0.00 | 480.00 |
| 6520 · HVAC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6525 · Elevator Maintenance | 0.00 | 0.00 | 0.00 | 935.00 | 0.00 | 0.00 | 0.00 | 935.00 |
| 6530 · Landscape & Clarifier Fee - Annual | 0.00 | 0.00 | 150.00 | 0.00 | 0.00 | 0.00 | 150.00 | 300.00 |
| Total 6500 · Maintenance & Repairs | 551.00 | 125.00 | 300.00 | 935.00 | 240.00 | 125.00 | 300.00 | 2,576.00 |
| **6600 · Marketing** | | | | | | | | |
| 6622 · Internet | 1,740.00 | 0.00 | 400.00 | 0.00 | 0.00 | 350.00 | 400.00 | 2,890.00 |
| 6646 · Yellow Pages | 2,100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,100.00 | 0.00 | 4,200.00 |
| 6674 · Banners & Flags | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total 6600 · Marketing | 3,840.00 | 0.00 | 400.00 | 0.00 | 0.00 | 2,450.00 | 400.00 | 7,090.00 |
| **6700 · Merchant Account fees** | | | | | | | | |
| 6705 · Merchant Card Expense | 0.00 | 0.00 | 0.00 | 1,660.00 | 0.00 | 0.00 | 0.00 | 1,660.00 |
| Total 6700 · Merchant Account fees | 0.00 | 0.00 | 0.00 | 1,660.00 | 0.00 | 0.00 | 0.00 | 1,660.00 |
| **6800 · Office Expense** | | | | | | | | |
| 6805 · Call Center Support | 290.00 | 350.00 | 0.00 | 0.00 | 0.00 | 350.00 | 0.00 | 990.00 |
| 6845 · Office Supplies Expense | 0.00 | 150.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0.00 | 300.00 |
| 6850 · Postage & Delivery | 70.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 70.00 |
| 6851 · Inventory Purchase | 0.00 | 300.00 | 0.00 | 0.00 | 0.00 | 300.00 | 0.00 | 600.00 |
| 6855 · Telephone / Fax /Internet | 566.23 | 0.00 | 0.00 | 0.00 | 0.00 | 566.23 | 0.00 | 1,132.46 |
| 6860 · Bottled water | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 | 0.00 | 70.00 |
| Eviction Costs | 0.00 | 0.00 | 0.00 | 150.00 | 0.00 | 0.00 | 0.00 | 150.00 |
| 6875 · Association Fees | 0.00 | 0.00 | 0.00 | 603.00 | 0.00 | 0.00 | 0.00 | 603.00 |
| Total 6800 · Office Expense | 961.23 | 800.00 | 0.00 | 753.00 | 0.00 | 1,401.23 | 0.00 | 3,915.46 |
| **6900 · Professional Fees** | | | | | | | | |
| 6920 · Software Support Maintenance | 0.00 | 200.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0.00 | 400.00 |
| 6930 · Legal | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 14,000.00 |
| 6940 · US Trustee Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6945 · Management Fees | 4,380.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,423.80 | 0.00 | 8,803.80 |
| Total 6900 · Professional Fees | 6,380.00 | 2,200.00 | 2,000.00 | 2,000.00 | 2,000.00 | 6,623.80 | 2,000.00 | 23,203.80 |
| **7000 · Taxes - Insurance - Interest** | | | | | | | | |
| 7005 · Property Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6282 · Tax Filing - Franchise Tax Board | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6284 · Tax Filing - City Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7010 · Site Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7015 · Adequate Protection Payments | 34,950.76 | 0.00 | 0.00 | 0.00 | 0.00 | 34,950.76 | 0.00 | 69,901.52 |
| Total 7000 · Taxes - Insurance - Interest | 34,950.76 | 0.00 | 0.00 | 0.00 | 0.00 | 34,950.76 | 0.00 | 69,901.52 |
| **7200 · Utilities** | | | | | | | | |
| 7205 · Electricity & Gas | 1,872.80 | 0.00 | 0.00 | 0.00 | 0.00 | 1,872.80 | 0.00 | 3,745.60 |
| 7210 · Trash Removal | 681.00 | 320.00 | 0.00 | 0.00 | 0.00 | 320.00 | 0.00 | 1,321.00 |
| 7215 · Water & Sewer | 199.50 | 0.00 | 0.00 | 0.00 | 0.00 | 199.50 | 0.00 | 399.00 |
| Total 7200 · Utilities | 2,753.30 | 320.00 | 0.00 | 0.00 | 0.00 | 2,392.30 | 0.00 | 5,465.60 |
| **Total Expense** | 49,701.29 | 7,136.00 | 2,700.00 | 5,448.00 | 5,931.00 | 47,943.09 | 6,391.00 | 125,250.38 |
| **Net Cash Flow** | -7,131.87 | 2,787.19 | 5,400.41 | 7,688.98 | 37,064.12 | -37,920.67 | 1,790.41 | 9,678.57 |